IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

EDUARDO POPULUS-REVUELTA,

Petitioner,

v.

BRUCE SCOTT, Warden, Northwest
ICE Processing Center, *et al.*,

Respondents.

2:26-cv-00636-RAJ

ORDER GRANTING IN PART
HABEAS PETITION

## I.      INTRODUCTION

THIS MATTER comes before the Court on Petitioner Eduardo Populus-Revuelta's Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241 (the "Petition," Dkt. # 1). Petitioner seeks immediate release or release upon a "reasonable ICE bond," and an order prohibiting his transfer outside the Western District of Washington during the pendency of this action.  Dkt. # 1 at 7.  Respondents filed a Return opposing Petitioner's requests for relief and seeking dismissal of the Petition (the "Return," Dkt. # 4), along with the supporting declaration of a Deportation Officer employed by U.S. Immigration and Customs Enforcement ("ICE") (the "Correa Declaration," Dkt. # 5).  For the reasons set forth below, the Court **GRANTS IN PART** the Petition.

ORDER – 1

## II.   BACKGROUND[1]

Petitioner Eduardo Populus-Revuelta was born in Veracruz, Mexico in 1960.  Dkt. # 1 at 2.  He was admitted to the United States as a lawful permanent resident on or about January 5, 1966, and has lived in the United States ever since.  *Id.*; Dkt. # 5 ¶ 3.  Petitioner is married to a U.S. citizen and has nine children who are citizens.  Dkt. # 1 at 2.  He previously maintained employment in the mortgage industry and as a handyman.  *Id.* at 3.

On July 10, 2016, Petitioner was arrested by the Spokane County Sheriff's Office for the offense of Rape of a Child First Degree – Attempt, RCW 9A.44.073.  Dkt. # 5 ¶ 4(a).  Petitioner represents that a plea offer was presented in connection with this charge, but that immigration consequences were not discussed before the offer was rejected.  Dkt. # 1 at 4.  On October 15, 2019, following a jury trial, Petitioner was convicted of Attempted Rape of a Child in the First Degree and sentenced to 81 months of incarceration and lifetime community custody.  *Id.* at 3; Dkt. # 5 ¶ 4(a).  The record reflects that Petitioner served approximately 72 months of this sentence before being released directly into ICE custody pursuant to a Notice to Appear ("NTA") on October 20, 2025.  Dkt. # 1 at 3; Dkt. # 5 ¶ 5.  Petitioner reports that he has no criminal history except for his 2019 conviction, and that he "received only positive behavioral reports" during his incarceration.  Dkt. # 1 at 3.

Petitioner's NTA charges him as removable under Sections 237(a)(2)(A)(iii) and 237(a)(2)(E)(i) of the Immigration and Nationality Act ("INA"), on the bases of his conviction of an aggravated felony and of a crime of child abuse, respectively.  Dkt. # 5 ¶ 5.  On December 3, 2025, Petitioner filed an Application for Asylum, Withholding of Removal, and protection under the Convention Against Torture in the Tacoma, Washington Immigration Court.  *Id.* ¶ 7.  Petitioner filed an amended Application on February 2, 2026.

---

[1]   This factual background is drawn from the Petition, as well as uncontroverted information from the Return and the Correa Declaration.

ORDER – 2

*Id.* On February 4, 2026, an Immigration Judge ("IJ") denied Petitioner's Application and ordered Petitioner removed to Mexico. *Id.* ¶ 9; Dkt. # 1 at 3. On February 24, 2026, Petitioner appealed his removal order to the Board of Immigration Appeals ("BIA"); Petitioner's appeal remains pending. Dkt. # 1 at 3; Dkt. # 5 ¶ 10. Petitioner has not requested a bond hearing in his proceedings before the Immigration Court, and explains that he has not done so because the IJ lacks jurisdiction to grant bond. Dkt. # 1 at 6; Dkt. # 5 ¶ 11; Dkt. # 6 at 2.

On the basis of the foregoing, Petitioner asserts that his continued detention violates due process, 8 U.S.C. § 1231(a), and *Zadvydas v. Davis*, 533 U.S. 678 (2001). Dkt. # 1 at 6–7. Petitioner therefore requests that the Court order his immediate release or alternatively release him on a "reasonable ICE bond," and enter a non-transfer order prohibiting removal from the Western District of Washington during the pendency of this action without prior notice. Dkt. # 1 at 7.

### III.   LEGAL STANDARD

"Writs of habeas corpus may be granted by . . . the district courts . . . within their respective jurisdictions." 28 U.S.C. § 2241(a). The district courts' habeas jurisdiction includes challenges to immigration-related detention. *Zadvydas*, 533 U.S. at 687. A petitioner may seek habeas relief by showing that he or she is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c). The petitioner bears the burden of proof by a preponderance of the evidence. *Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004).

### IV.   DISCUSSION

#### A.   Statutory Basis for Petitioner's Detention

Petitioner challenges his "post-order" detention as "unlawful[ly] prolonged" under

ORDER – 3

8 U.S.C. § 1231(a) and *Zadvydas*. Dkt. # 1 at 2, 5–7. However, as Respondents correctly note, Petitioner is detained under Section 1226(c) of the INA, not Section 1231(a). Dkt. # 4 at 1–2. Because Petitioner's February 4, 2026 removal order remains pending before the BIA, it is not yet final and Petitioner is therefore not yet subject to Section 1231(a) of the INA. *See* Dkt. # 5 ¶¶ 9–10; *Ho v. Noem*, No. C25-2222-RSM-MLP, 2025 WL 3466923, at *2 (W.D. Wash. Nov. 24, 2025), *report and recommendation adopted*, No. C25-2222-RSM, 2025 WL 3471855 (W.D. Wash. Dec. 3, 2025) (petitioner was "not yet subject to a final order of removal and, thus . . . not subject to mandatory detention under § 1231(a)" while his appeal remained pending with the BIA). Petitioner concedes on Reply that he is detained pursuant to Section 1226(c) pending the BIA's resolution of his appeal. Dkt. # 6 at 1. In light of the parties' agreement regarding the statutory basis for Petitioner's current detention, the Court assumes that Petitioner's detention is pursuant to 8 U.S.C. § 1226(c).

### B.     Administrative Exhaustion

Respondents argue that this Court should deny the Petition because Petitioner has not exhausted his administrative remedies by seeking a custody redetermination hearing before an IJ. Dkt. # 4 at 3. Petitioner responds that exhaustion is not required because the IJ lacks jurisdiction to grant bond to a detainee held under 8 U.S.C. § 1226(c). Dkt. # 6 at 2 (citing 8 C.F.R. § 1003.19(h)(2)(i)(D)). The exhaustion requirement is "prudential, rather than jurisdictional," and a court may waive the requirement if "administrative remedies are inadequate or not efficacious, pursuit of administrative remedies would be a futile gesture, irreparable injury will result, or the administrative proceedings would be void." *Hernandez v. Sessions*, 872 F.3d 976, 988 (9th Cir. 2017) (citations omitted).

The Court finds that requiring Petitioner to request a custody redetermination or bond hearing before an IJ, only to be denied one pursuant to 8 U.S.C. § 1226(c), would be "an exercise in futility." *See E.C. v. Noem*, No. 2:25-CV-01789-RFB-BNW, 2025 WL

ORDER – 4

2916264, at *8 (D. Nev. Oct. 14, 2025) (citation omitted) (waiving exhaustion where government argued that petitioner should be required to request custody redetermination hearing, despite binding BIA decision precluding IJ from finding it has jurisdiction to consider bond).  If Petitioner requests a custody redetermination, the IJ would be forced to conclude that it lacked jurisdiction to consider bond under Section 1226(c), rendering habeas relief the only meaningful avenue available to Petitioner to challenge the constitutionality of his ongoing detention.  *Id.* at *10; *see also Omer G. G. v. Kaiser*, No. 1:25-CV-01471-KES-SAB (HC), 2025 WL 3254999, at *4 n.7 (E.D. Cal. Nov. 22, 2025) (waiving prudential exhaustion requirement due to futility because petitioner was mandatorily detained under the INA and was therefore ineligible for a bond hearing); *Crispin M. C. v. Noem*, No. 1:25-CV-01487-KES-HBK (HC), 2026 WL 70553, at *3 n.5 (E.D. Cal. Jan. 8, 2026) (similar).

The authority upon which Respondents rely does not disturb the Court's conclusion. *See* Dkt. # 4 at 3 (citing *Cristobal v. Asher*, No. C20-1493-RSM-BAT, 2020 WL 8678097, at *3 (W.D. Wash. Dec. 14, 2020), *report and recommendation adopted*, No. C20-1493-RSM-BAT, 2021 WL 796597 (W.D. Wash. Mar. 2, 2021)).  The petitioner in *Cristobal* was detained pursuant to Section 1226(a) and failed to seek bond redetermination on the basis of changed circumstances after a prior denial by the IJ.  2020 WL 8678097, at *3. The court rejected the petitioner's arguments that a bond redetermination request would be futile on the bases that (1) the respondents disputed the presence of a material change in circumstances; and (2) the requested hearing would "contravene[] immigration agency policy and shift[] the burden of detention upon the agency."  *Id.*  Here, Petitioner does not seek to circumvent the administrative process based on a factual dispute or a desire to alter the burden of proof—he is simply unable to obtain a bond hearing from an IJ given the statutory basis for his detention.  Unlike in *Cristobal*, the Court here need not "guess at

ORDER – 5

what the IJ would do if petitioner requested redetermination"—in this case, it is clear that the IJ will deny a bond hearing due to its lack of jurisdiction. *Id.* As such, "pursuit of administrative remedies would almost certainly be futile" in this case. *Gurrola v. Cruz*, No. 1:25-CV-02078-JLT-HBK (HC), 2026 WL 494478, at *3 (E.D. Cal. Feb. 23, 2026), *report and recommendation adopted sub nom. Herredia Gurrola v. Cruz*, No. 1:25-CV-02078 JLT HBK (HC), 2026 WL 622124 (E.D. Cal. Mar. 5, 2026)).

Accordingly, the Court exercises its discretion to waive the requirement of prudential exhaustion in this case, and proceeds to the merits of Petitioner's due process claim.

## C. Due Process

In *Demore v. Kim*, 538 U.S. 510 (2003), the Supreme Court held that "the Government may constitutionally detain" noncitizens detained pursuant to 8 U.S.C. § 1226(c) "during the limited period necessary for their removal proceedings." *Id.* at 530. The Court reasoned that mandatory detention under Section 1226(c) is typically "brief" and "has a definite termination point" usually resulting in detention of less than five months (the petitioner in *Demore* had been detained for six months). *Id.* at 513, 529–31. In the years following the Supreme Court's decision in *Demore*, the Ninth Circuit has declined to resolve the question of whether due process requires a bond hearing for noncitizens detained under 8 U.S.C. § 1226(c). *See Martinez v. Clark*, 36 F.4th 1219, 1223 (9th Cir. 2022), *judgment vacated on other grounds*, 144 S.Ct. 1339 (2024) ("Whether due process requires a bond hearing for [noncitizens] detained under § 1226(c) is not before us today. And we take no position on that question."). However, many district courts, including within this District, "agree that prolonged mandatory detention pending removal proceedings, without a bond hearing, 'will—at some point—violate the right to due process.'" *Martinez v. Clark*, 2019 WL 5968089, at *6 (W.D. Wash. May 23, 2019), *report*

ORDER – 6

*and recommendation adopted*, 2019 WL 5962685 (W.D. Wash. Nov. 13, 2019) (quoting *Sajous v. Decker*, 2018 WL 2357266, at *8 (S.D.N.Y. May 23, 2018) and collecting cases)).  In cases involving noncitizens detained pursuant to § 1226(c) who have yet to receive a bond hearing, courts in this District apply a "multi-factor analysis . . . to determine whether § 1226(c) detention has become unreasonable" and therefore violates due process. *Martinez*, 2019 WL 5968089, at *9.  Under this analysis, known as "the *Martinez* test," courts consider the following factors:

> (1) the total length of detention to date; (2) the likely duration of future detention; (3) whether the detention will exceed the time the petitioner spent in prison for the crime that made him [or her] removable; (4) the nature of the crimes the petitioner committed; (5) the conditions of detention; (6) delays in the removal proceedings caused by the petitioner; (7) delays in the removal proceedings caused by the government; and (8) the likelihood that the removal proceedings will result in a final order of removal.

*Id.*

The Court therefore proceeds to apply each of the eight *Martinez* factors to Petitioner's detention.

### 1.    *Length of Detention to Date*

The first factor, the length of detention to date, is the most important of the eight *Martinez* factors. 2019 WL 5968089, at *9.  The longer that mandatory detention continues beyond the "brief" period authorized in *Demore*, the more likely it is to contravene due process without the opportunity for an individualized bond hearing.  *Id.* (citations omitted).  In this case, Petitioner has been detained for approximately six months.  Accordingly, the first *Martinez* factor weighs slightly in favor of Petitioner.  *See Odimara v. Bostock*, No. C24-572, 2024 WL 3862256, at *6 (W.D. Wash. July 12, 2024) ("Petitioner was detained for four months at the time he filed his Petition, and his detention has now extended to approximately six months . . . [T]his first factor is neutral or, at most, weighs slightly in

ORDER – 7

favor of [petitioner].")

2. *Likely Duration of Future Detention*

The second *Martinez* factor requires the Court to consider "how long the detention is likely to continue absent judicial intervention; in other words, the anticipated duration of all removal proceedings including administrative and judicial appeals." 2019 WL 5968089, at *9. Respondents summarily argue that "Petitioner's removal proceedings are not expected to last much longer" based on the IJ's order of Petitioner's removal and denial of his claims for relief. Dkt. # 4 at 4. However, as Respondents acknowledge, Petitioner filed an appeal of the IJ's removal order to the BIA on February 24, 2026. *Id.*; Dkt. # 5 ¶ 10. As a court in this District recently found, BIA appeals may take over six months. *Toktosunov v. Wamsley*, No. 2:25-CV-1724-TL, 2025 WL 3492858, at *5 (W.D. Wash. Dec. 5, 2025).[2] Furthermore, if the BIA denies Petitioner's appeal, he may seek review in the Ninth Circuit, and this appellate process may take an additional two years or longer. *Hong v. Mayorkas*, No. 20-CV-01784-LK, 2022 WL 1078627, at *7 (W.D. Wash. Apr. 11, 2022).

Courts in this District have found that, where a petitioner has already filed a BIA or Ninth Circuit appeal, the second factor weighs in Petitioner's favor. *See Bojorge-Sequeira v. Geo Grp. Inc.*, No. 2:25-CV-01807-KKE-GJL, 2026 WL 288378, at *5 (W.D. Wash. Jan. 15, 2026), *report and recommendation adopted*, No. 2:25-CV-01807-KKE-GJL, 2026

---

[2] *Toktosunov* involved a claim of prolonged detention under 8 U.S.C. § 1225(b), and the court therefore applied the six-factor test articulated in *Banda v. McAleenan*, 385 F. Supp. 3d 1099 (W.D. Wash. 2019). However, the *Banda* test is "nearly identical" to the *Martinez* test, except that it omits the two factors related to the petitioner's criminal history and detention. *See Rahmani v. Bondi*, No. C26-362-KKE, 2026 WL 638364, at *4 n.1 (W.D. Wash. Mar. 6, 2026). The six *Banda* factors are "derived directly from *Martinez*," and "the analysis under each factor is the same regardless of whether it is in the context of the six-factor *Banda* test or all eight *Martinez* factors." *Hong v. Mayorkas*, No. 20-CV-01784-LK, 2022 WL 1078627, at *4 n.3 (W.D. Wash. Apr. 11, 2022). The Court therefore relies on cases applying both the *Banda* test and the *Martinez* test throughout this Order.

ORDER – 8

WL 285657 (W.D. Wash. Feb. 3, 2026) (collecting cases involving already-filed Ninth Circuit petitions for review, and finding that second factor favored the petitioner in light of his pending BIA filing). This Court agrees and finds that the second *Martinez* factor weighs in Petitioner's favor "[g]iven the length of time the appeals process can take." *Id.*

### 3. *Length of Criminal Detention*

Under the third *Martinez* factor, the Court reviews the length of detention compared to the time the petitioner spent in prison for the crime that made him removable. 2019 WL 5968089, at *9. Here, the record reflects that Petitioner served approximately 72 months in prison for his conviction of attempted first degree rape of a child in violation of Washington state law. Dkt. # 1 at 3; Dkt. # 5 ¶ 4–5 (citing RCW 9A.44.073). At this stage, the length of Petitioner's current detention (approximately six months) remains significantly shorter than the length of his criminal sentence. Accordingly, this factor weighs in favor of Respondents.

### 4. *Nature of Criminal Offense*

The fourth factor requires the Court to consider the nature of the crimes that petitioner committed. *Martinez*, 2019 WL 5968089, at *9. Petitioner was convicted by a jury of attempted first degree rape of a child. Dkt. # 5 ¶ 4. Rape of a child in the first degree is a class A felony in Washington state. RCW 9A.44.073(2). The Correa Declaration indicates that Petitioner's counsel acknowledged at an immigration court hearing that Petitioner has been convicted of a "particularly serious crime." *Id.* ¶ 8. Petitioner does not contest this characterization in his Reply, but notes that he has "never had any other criminal history whatsoever" and is actively pursuing post-conviction relief. Dkt. # 1 at 3–4; *see generally* Dkt. # 6. Based on its review of the record as a whole, the Court finds that this factor weighs in favor of Respondents.

ORDER – 9

### 5.   *Conditions of Detention*

Under the fifth *Martinez* factor, the Court considers the conditions of the detention facility where the petitioner is detained.  2019 WL 5968089, at *9.  "The more that the conditions under which the [non-citizen] is being held resemble penal confinement, the stronger [the] argument that he is entitled to a bond hearing."  *Juarez v. Wolf*, No. C20-1660-RJB-MLP, 2021 WL 2323436, at *6 (W.D. Wash. May 5, 2021), *report and recommendation adopted*, No. 20-1660 RJB - MLP, 2021 WL 2322823 (W.D. Wash. June 7, 2021) (quoting *Jamal A. v. Whitaker*, 358 F. Supp. 3d 853, 860 (D. Minn. 2019)).  While neither party makes any specific arguments regarding the conditions of Petitioner's detention at NWIPC, courts in this District have recently found that conditions at NWIPC resemble those in many prisons and jails.  *See Gomez v. ICE Field Off. Dir.*, No. 2:25-CV-02242-TL-TLF, 2026 WL 449536, at *5 (W.D. Wash. Jan. 27, 2026), *report and recommendation adopted sub nom. Osuna Gomez v. ICE Field Off. Dir. & Facility Adm'r*, No. 2:25-CV-02242-TL-TLF, 2026 WL 447409 (W.D. Wash. Feb. 17, 2026) (collecting cases).  Accordingly, this factor favors Petitioner.

### 6.   *Delays in Removal Proceedings*

Under the sixth and seventh *Martinez* factors, the Court considers "the nature and extent of any delays in the removal proceedings caused by petitioner and the government, respectively."  2019 WL 5968089, at *10.  Petitioners detained in immigration custody are "entitled to raise legitimate defenses to removal," and these challenges "cannot undermine [a] claim that detention has become unreasonable."  *Id.* (citing *Liban M.J. v. Sec'y of Dep't of Homeland Sec.*, 367 F. Supp. 3d 959, 965 (D. Minn. 2019)).  The sixth factor, therefore, only weighs against a petitioner who "has 'substantially prolonged his stay by abusing the processes provided,'" not one who has "simply made use of the statutorily permitted appeals process."  *Gomez*, 2026 WL 449536, at *5 (quoting *Hechavarria v. Sessions*, 891

ORDER – 10

F.3d 49, 56 n.6 (2d Cir. 2018)).  In this case, Petitioner has filed an appeal to the BIA, and further states that he is pursuing post-conviction relief in connection with the offense that the Government contends renders him removable.  However, Respondents make no allegations that Petitioner has unduly delayed his removal proceedings.  *See generally* Dkt. # 4.  Based on the available record, the Court has no basis to conclude that Petitioner's pursuit of relief from removal reflects any abuse of process.

With respect to the Government, "[i]f immigration officials have caused delay, it weighs in favor of finding continued detention unreasonable . . . [c]ontinued detention will also appear more unreasonable when the delay in the proceedings was caused by the immigration court or other non-ICE government officials."  *Martinez*, 2019 WL 5968089, at *10 (citing *Sajous*, 2018 WL 2357266, at *11).  Here, there is no allegation or evidence of undue delay caused by Respondents.  Accordingly, the Court finds that the sixth and seventh *Martinez* factors weigh neutrally.

7.      *Likelihood Removal Proceedings Will Result in a Final Order of Removal*

Finally, the Court considers the eighth *Martinez* factor, "the likelihood that the removal proceedings will result in a final order of removal."  2019 WL 5968089, at *10. "Where a noncitizen has not asserted any grounds for relief from removal, presumably the noncitizen will be removed from the United States, and continued detention will at least marginally serve the purpose of detention, namely assuring the noncitizen is removed as ordered."  *Id.* (citing *Sajous*, 2018 WL 2357266, at *11).  On the other hand, "where a noncitizen has asserted a good faith challenge to removal, 'the categorical nature of the detention will become increasingly unreasonable.'"  *Id.* (quoting *Reid v. Donelan*, 819 F.3d 486, 495 (1st Cir. 2016)).

In this case, Petitioner is pursuing an appeal of his removal order before the BIA. This Court joins other courts in this District in declining to speculate as to the likelihood

ORDER – 11

of Petitioner's success on appeal.  *See, e.g.*, *Gomez*, 2026 WL 449536, at *6; *Murillo-Chavez v. Garland*, No. C22-303-LK-MLP, 2022 WL 16555994, at *7 (W.D. Wash. Aug. 30, 2022), *report and recommendation adopted*, No. 2:22-CV-0303-LK, 2022 WL 16553176 (W.D. Wash. Oct. 31, 2022) ("[I]n the absence of any evidence Petitioner's appeal is frivolous or taken in bad faith, the court concludes this factor is neutral."); *Juarez*, 2021 WL 2323436, at *7 (finding factor neutral where the petitioner's appeal was pending and the court was "unwilling to conclude, based on the record before it, that the appeal is frivolous or that Petitioner will not ultimately prevail.").  The Court therefore finds that the eighth *Martinez* factor is neutral.

        8.     *Weighing the Factors*

As reflected in the above discussion, three of the *Martinez* factors weigh in favor of granting Petitioner a bond hearing, two factors weigh in Respondents' favor, and the remaining factors are neutral.  The Court thus concludes that Petitioner's continued mandatory detention under Section 1226(c) has become unreasonable and violates due process.

While Petitioner requests immediate release from custody, or release upon a "reasonable ICE bond," Dkt. # 1 at 7, there is "no authority supporting [his] claim that he is entitled to an order of release."  *Martinez*, 2019 WL 5968089, at *10.  Rather, the appropriate remedy is an individualized bond hearing before an immigration judge.  *See Maliwat v. Scott*, No. 2:25-CV-00788-TMC, 2025 WL 2256711, at *9 (W.D. Wash. Aug. 7, 2025) (collecting cases).  At the bond hearing, Respondents must be required to meet the clear and convincing standard of proof to justify Petitioner's continued detention, consistent with *Singh v. Holder*, 638 F.3d 1196 (9th Cir. 2011). *See Maliwat*, 2025 WL 2256711, at *10; *Martinez v. Clark*, 124 F.4th 775, 785–86 (9th Cir. 2024) (concluding that the BIA applied the correct legal standard in requiring the government to prove by

ORDER – 12

clear and convincing evidence that a noncitizen detained under Section 1226(c) was a danger to the community). If Respondents fail to provide Petitioner with a constitutionally adequate bond hearing within fourteen (14) days of the date of this Order, Respondents must immediately release Petitioner from custody. *See Barrios Osorio v. Bondi*, No. 2:26-CV-00317-JNW, 2026 WL 607765, at *4 (W.D. Wash. Mar. 4, 2026) (citation omitted).

**D.      Petitioner's Request for Order Preventing Transfer**

With respect to Petitioner's request for an order "prohibiting removal from this District during the pendency of this action without 48-hour notice to Petitioner and counsel," Dkt. # 1 at 7, the Court construes this request as seeking an order requiring pre-transfer notice until Petitioner receives habeas relief. *Toribio v. Scott*, No. 2:25-CV-02540-TMC, 2025 WL 3906472, at *2 (W.D. Wash. Dec. 31, 2025). This request will be moot once this Order partially granting habeas relief is entered. *Id*.

## V.      CONCLUSION

For the foregoing reasons, the Court **ORDERS** as follows:

1.  The Petition is **GRANTED IN PART**. Dkt. # 1.

2.  Respondents' request that the Petition be dismissed is **DENIED IN PART**. Dkt. # 4.

3.  Respondents are ordered to provide Petitioner with an individualized bond hearing that complies with the requirements of *Singh v. Holder*, 638 F.3d 1196 (9th Cir. 2011), within fourteen (14) calendar days of this Order.

4.  Within two (2) business days of the bond hearing, Respondents shall file a status report confirming compliance with this Order. The status report shall detail if and when the ordered bond hearing occurred, if bond was granted or denied, and if denied, the reasons for that denial.

5.  If Respondents fail to provide Petitioner with a constitutionally adequate bond

ORDER – 13

hearing within fourteen (14) calendar days of this Order, Respondents shall immediately release Petitioner from custody under reasonable conditions of supervision.   Respondents shall file with the Court a notice confirming Petitioner's release within two (2) business days of release.

6.  All other requested relief is **DENIED** without prejudice, as set forth in this Order.

Dated this 20th day of April, 2026.

_Richard A Jones_

The Honorable Richard A. Jones
United States District Judge

ORDER – 14